IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VILLARI BRANDES & GIANNONE, PC | : | CIVIL ACTION |
| | : | |
| | : | No. 13-297 |
| v. | : | |
| | : | |
| WELLS FARGO FINANCIAL LEASING, INC., et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                    **September 30, 2013**

Plaintiff Villari Brandes & Giannone, PC (VBG), brings claims for wrongful use of civil proceedings, negligence, fraud, and outrageous conduct/punitive damages against Wells Fargo Financial Leasing, Inc. (Wells Fargo), and its attorneys, Brian Fleischer, Nicola Suglia, and the law firm of Fleischer, Fleischer & Suglia (collectively, Fleischer), arising out of Defendants' pursuit of a breach of contract action against VBG in state court, which Defendants ultimately voluntarily dismissed on the eve of trial. Wells Fargo and Fleischer have each filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motions will be granted.

## FACTS[1]

In March 2004, VBG[2] entered into a series of agreements with Fraser Advanced Information Systems (Fraser) concerning VBG's rental of photocopiers and document

---

[1] The following facts are drawn from the allegations of VBG's Complaint and the voluminous exhibits thereto, which this Court may also properly consider in evaluating the instant motions to dismiss. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (holding materials a court may consider in deciding a Rule 12(b)(6) motion include the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents on which the plaintiff's claims are based). The Court accepts as true the well-pleaded allegations of the Complaint; however, "[w]here those allegations are contradicted by written exhibits that [VBG] attached to [its] . . . [C]omplaint, . . . the exhibits trump the allegations." *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

accounting software from Fraser. Compl. ¶ 7-8. On March 16, 2004, VBG's office manager contemporaneously executed the following documents with Fraser: (1) a "Delivery and Installation Certificate," (2) an "Equipment Rental Agreement," (3) a "Sales Agreement," (4) an "Extended Warranty Agreement," and (5) an "Agreement Regarding Additional Terms and Conditions."[3]  *Id.* ¶ 10. These documents were collected behind a cover sheet bearing the heading "Equipment Rental Agreement," and are collectively attached to the Complaint as Exhibit 1.[4]  VBG asserts the documents together constitute the full Equipment Rental Agreement, which VBG refers to as the "Lease." For clarity, this Court will refer to the collected documents as the Lease or the lease documents and will use the term Equipment Rental Agreement to refer to the two-page document bearing that title. Because these documents and their proper interpretation form the basis for both the underlying state court action as well as the instant suit, the Court will describe the documents in some detail.

In the Delivery and Installation Certificate, VBG certified it had "received and accepted all the equipment described in the Equipment Rental Agreement" and the equipment "conforms with our requirements and has been fully installed." Compl. Ex. 1, ECF No. 1-2 at 20. The Certificate further provides VBG has "reviewed and . . . understand[s] all of the terms and conditions of the Equipment Rental Agreement" and "[t]here are no side agreements or cancellation clauses outside of the Equipment Rental Agreement." *Id.*

---

[2] At the time, VBG was known as Villari Kusturiss Brandes & Kline, P.C.

[3] Although VBG alleges these documents were contemporaneously executed by authorized representatives of both VBG and Fraser on March 16, 2004, only the Extended Warranty Agreement and the Agreement Regarding Additional Terms and Conditions bear a Fraser signature.

[4] Certain pages of the documents—namely, the reverse side of both the Sales Agreement and the Extended Warranty Agreement—are omitted from Exhibit 1; however, these pages are in the record as part of Exhibit 14 to the Complaint.

The Equipment Rental Agreement reflects VBG's agreement to rent from Fraser four pieces of equipment—two Canon IR6020i copiers, one Muratec 360 fax, and one Sharp C260 color copier—for a period of 60 months for a monthly payment of $2,175.00. The Equipment Rental Agreement provides VBG agrees to the terms and conditions stated therein; such terms and conditions are a "complete and exclusive statement of [the parties'] agreement" and may be modified only by written agreement; and "this Agreement cannot be terminated except as provided for in this Agreement." *Id.* at 21. The Equipment Rental Agreement further provides Fraser will be "responsible for installing and keeping the equipment in good working order," while VBG is "responsible for protecting the equipment from damage . . . and from loss." *Id.* at 22. The Agreement includes an "Assignment" provision, which permits Fraser to "sell, assign or transfer this Agreement," but prohibits VBG from doing so. *Id.* If Fraser assigns the Agreement, "the new owner will have the same rights and benefits that [Fraser] ha[s] now and will not have to perform any of [Fraser's] obligations." *Id.* The rights of any new owner "will not be subject to any claims, defenses, or set offs that [VBG] may have against [Fraser]." *Id.* Finally, under "Default," the Agreement provides if VBG defaults on a payment, Fraser "can require that [VBG] pay the remaining balance of this Agreement and return the equipment to [Fraser]." *Id.*

The Sales Agreement references the same four pieces of equipment listed in the Equipment Rental Agreement, lists an installation and delivery fee of $1,875.00, and addresses the parties' warranties and obligations with respect to the equipment. *See* Compl. Ex. 14, ECF No. 1-2 at 101-102. The Sales Agreement also reflects Fraser's agreement to pick up and store

for VBG certain other equipment (i.e., two Canon IR6000 copiers) until such equipment "goes back to [the] leasing co."[5] *Id.* at 101.

The Extended Warranty Agreement reflects VBG's selection of "gold" level maintenance and also references that VBG is trading in two Canon IR6000 models. Compl. Ex. 14, ECF No. 1-2 at 103-04.

Finally, the parties executed the Agreement Regarding Additional Terms and Conditions, with the stated purpose "to further define the terms and conditions of" the Sales Agreement.[6] Compl. Ex. 1, ECF No. 1-2 at 25. Section I concerns Fraser's obligations with respect to the preexisting copiers and related equipment which Fraser agrees to remove from VBG's offices and store. Section II concerns Fraser's obligations to "install document copying and printing accounting software on [VBG's] computer network and computers," and also provides:

> Should [VBG], in its sole discretion, determine that the document accounting software operates in an ineffective or unsatisfactory manner, FRASER shall, without cost to [VBG], remove the document accounting software from [VBG's] computer network and computers and restore [VBG's] computer network and computers to their pre-existing condition and configuration within thirty (30) days.

*Id.* Section III sets forth certain "miscellaneous" terms, including the following:

---

[5] VBG appears to have leased new equipment from Fraser to replace existing equipment subject to a different lease. *See, e.g.*, Compl. Ex. 1, ECF No. 1-2 at 26 (describing VBG's "current lease").

[6] Specifically, the Agreement provides:

> The parties having entered into an agreement regarding photocopiers and document accounting software dated __3/16__, 2004 ('Sales Agreement') and desiring to further define the terms and conditions of this, in consideration of the promises and covenants contained in this Agreement and the Sales Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows . . . .

Compl. Ex. 1, ECF No. 1-2 at 25.

3.1     In the event of FRASER's failure to perform any of its obligations . . . [VBG] may terminate this Agreement and/or the Sales Agreement, take possession of the Copiers [i.e., the copiers Fraser is storing for VBG], and may enter the premises of FRASER or its agents to do so, and exercise all other rights granted to it under this Agreement and all rights in effect in the applicable jurisdiction(s) and under any other applicable jurisdiction.

. . . .

3.4     To the extent inconsistent with any other agreement between the parties, this Agreement shall control the rights, duties and obligations of the parties.

*Id.*

Although VBG dealt exclusively with Fraser with respect to the lease arrangements, unbeknownst to VBG, Wells Fargo was involved in the transaction from the outset. Fraser forwarded the lease documents to Wells Fargo for approval, and Wells Fargo, rather than Fraser, then purchased the equipment to be leased to VBG. Upon delivery of the leased equipment, Fraser assigned the lease to Wells Fargo, which proceeded to collect the monthly lease payments under Fraser's name pursuant to the terms of a "Private Label Dealer Agreement" between Wells Fargo and Fraser. On several occasions, Wells Fargo employees contacted VBG regarding lease payments, falsely representing they were "from Fraser." Compl. ¶ 21.

After experiencing problems with the leased equipment, which Fraser was unable to remedy, on July 6, 2007, VBG notified Fraser it would be "removing [Fraser's] system from [VBG's] office within the next several weeks" and ceased making monthly payments. *See* Compl. Ex. 5, ECF No. 1-2 at 40; *see also* Compl. ¶¶ 22-23. Fraser responded to VBG's termination letter on August 3, 2007, disclosing for the first time that Wells Fargo was its "Leasing Partner" and directing VBG to contact Wells Fargo regarding the termination. VBG thereafter communicated with Wells Fargo, which refused to accept VBG's termination, asserting the agreement was not cancelable. Although VBG provided Wells Fargo with copies

of the lease documents,[7] Wells Fargo continued to maintain the agreement was not subject to an early termination provision.

At some point, Wells Fargo retained Fleischer in connection with the lease dispute, and in October 2007, Fleischer wrote to VBG, advising that Wells Fargo had authorized Fleisher to file suit against VBG for the total accelerated balance under the lease agreement unless VBG paid the $5,709.29 balance then due within 10 days. Compl. Ex. 11, ECF No. 1-2 at 54. VBG also provided Fleischer with copies of the lease documents, but Defendants continued to maintain the lease agreement was not subject to an early termination provision.

On March 3, 2008, Wells Fargo, represented by Fleischer, filed suit against VBG in the Montgomery County Court of Common Pleas, asserting claims for breach of the Equipment Rental Agreement[8] and unjust enrichment, and seeking damages in the amount of $70,595.74. Compl. Ex. 13. Defendants attached copies of the Equipment Rental Agreement and the Delivery and Installation Certificate to their state court complaint, but did not attach or otherwise disclose the existence of the Agreement Regarding Additional Terms and Conditions, even though Wells Fargo and Fraser both had copies of this document.

The existence of the Agreement Regarding Additional Terms and Conditions and the nature of the relationship between Wells Fargo and Fraser eventually came to light in the state court case: On March 27, 2008, VBG filed an Answer, New Matter, and Third Party Complaint in the state court action, attaching a complete set of the lease documents, including the

---

[7] While VBG alleges it provided Wells Fargo with copies of the "Lease documents," Compl. ¶ 28, VBG's letter to Wells Fargo indicated VBG was enclosing only "a copy of the Business Plan presented to use by Fraser on which the lease with your company is based," *id.* Ex. 10, ECF No. 1-2 at 51. Nevertheless, the Court will assume VBG provided Wells Fargo with copies of all of the lease documents.

[8] In their complaint, Defendants used the term "Lease Agreement"; however, the agreement they alleged VBG had breached was the Equipment Rental Agreement.

Agreement Regarding Additional Terms and Conditions. In May 2009, Fraser, which VBG sued as a third-party defendant, admitted in discovery that it had entered into the Agreement Regarding Additional Terms and Conditions with VBG. And in November 2009, the Private Label Dealer Agreement and an addendum thereto were produced in response to a court order compelling their production. Notwithstanding the disclosure of this information, Defendants persisted in maintaining Fraser was not an agent of Wells Fargo and the Equipment Rental Agreement was not subject to an early termination provision.

After several delays, the state court action was set to commence trial on July 13, 2012. However, on July 11, 2012, Wells Fargo advised the state court it would be voluntarily dismissing its complaint.

On December 18, 2012, VBG filed the instant lawsuit in the Montgomery County Court of Common Pleas, asserting claims for wrongful use of civil proceedings (Count I), negligence (Count II), fraud (Count III), and outrageous conduct/punitive damages (Count IV). The crux of VBG's claims is that Defendants initiated and prosecuted the state court action to recover lease payments they knew VBG did not owe because VBG had properly exercised its rights to cancel the lease agreement under the agreement's early termination provision. VBG asserts Defendants intentionally failed to disclose the Agreement Regarding Additional Terms and Conditions, which contains the early termination provision, and persisted in arguing the lease agreement was not cancelable even after VBG produced the Agreement Regarding Additional Terms and Conditions and Fraser admitted the Agreement existed. VBG also asserts Defendants persisted in suing VBG even though the terms of the Private Label Dealer Agreement obligate Fraser to reimburse Wells Fargo in the event a lessee exercises a right of early termination. VBG seeks

damages, including, *inter alia*, the expenses it incurred litigating the state court action Defendants filed against it.

Defendants removed the case to federal court on January 18, 2013, and thereafter filed the instant motions to dismiss, which VBG opposes.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court first must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11; *see also Iqbal*, 556 U.S. at 678 (noting for purposes of a motion to dismiss a court need not "accept as true a legal conclusion couched as a factual allegation" (citation and internal quotation marks omitted)). The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

The tort of wrongful use of civil proceedings is codified in Pennsylvania at 42 Pa. Cons. Stat. Ann. §§ 8351–8354, which is also known as the "Dragonetti Act." Under the Dragonetti Act,

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:

> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. Cons. Stat. Ann. § 8351(a). A plaintiff seeking redress under the Dragonetti Act "bears a heavy burden." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002). The plaintiff "need not only demonstrate either probable cause or gross negligence, but must also prove the underlying action was filed for an improper purpose." *Schmidt v. Currie*, 217 F. App'x 153, 155 (3d Cir. 2007) (citing *Broadwater v. Sentner*, 725 A.2d 779, 784 (Pa. Super. Ct. 1999)).

For purposes of the Act, a person has probable cause to initiate or continue civil proceedings if "he reasonably believes in the existence of the facts upon which the claim is based," and either:

> (1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;
>
> (2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or
>
> (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa. Cons. Stat. Ann. § 8352. The burden is on the Dragonetti Act plaintiff to show "[t]he defendant did not have probable cause for his action." *Id.* § 8354(3). To satisfy this burden, the plaintiff must show the defendant "had no reasonable basis for filing the underlying action." *Broadwater*, 725 A.2d at 783. The question is not whether the defendant "is correct in believing that the court would sustain the claim, but whether his opinion that there was a sound chance that the claim might be sustained was a reasonable one." *Bobrick Corp. v. Santana Prods., Inc.*, 698

F. Supp. 2d 479, 495 (M.D. Pa. 2010) (quoting Restatement (Second) of Torts § 675 cmt. f (1977)), *aff'd*, 422 F. App'x 84 (3d Cir. 2011).  To establish a Dragonetti Act claim based on gross negligence, a plaintiff must show "the want of even scant care" or "the failure to exercise even that care which a careless person would use."  *Id.* at 497 (citation and internal quotation marks omitted).  The existence of probable cause or gross negligence is for the court to decide as a matter of law when the facts are not in dispute, *Schmidt*, 217 F. App'x at 155, and these issues may be resolved on a motion to dismiss, *see U.S. Express Lines Ltd.*, 281 F.3d at 395-96; *Arader v. Dimitrov*, No. 11-3626, 2011 WL 4807924, at *5 (E.D. Pa. Oct. 7, 2011); *Bobrick Corp.*, 698 F. Supp. 2d at 491-92.

Upon review of the Complaint and exhibits, it is apparent Defendants had a reasonable basis for initiating and prosecuting the state court breach of contract action.  VBG argues Defendants lacked probable cause to pursue the contract case because they knew the Lease afforded VBG a right of early termination, which VBG exercised, yet they intentionally provided an incomplete version of the lease documents to the state court to hide this fact.  VBG's argument is premised on its assertion that the lease documents constitute a single, indivisible lease agreement, yet, on its face, this agreement comprises five separate documents which do not all reference each other.  For example, the Delivery and Installation Certificate refers only to the Equipment Rental Agreement and states "[t]here are no side agreements or cancellation clauses outside the Equipment Rental Agreement."  Compl. Ex. 1, ECF No. 1-2, at 20.  Likewise, the Equipment Rental Agreement refers only to the Delivery Installation Certificate and provides "this Agreement cannot be terminated except as provided for in this Agreement."  *Id.* at 21.

VBG argues the entire Lease, including the Equipment Rental Agreement, was subject to an early termination provision based on the Agreement Regarding Additional Terms and

Conditions. As Fleischer notes, however, the Agreement Regarding Additional Terms and Conditions incorporates only the Sales Agreement and the terms of Fraser's proposal to VBG; it says nothing about the Equipment Rental Agreement. *Id.* at 25. Moreover, while the Agreement Regarding Additional Terms and Conditions does purport to give VBG certain termination rights in the event Fraser fails to perform, it permits VBG to terminate only the Agreement Regarding Additional Terms and Conditions and the Sales Agreement. *Id.* ("In the event of FRASER'S failure to perform any of its obligations . . . [VBG] may terminate *this Agreement and/or the Sales Agreement . . . .*" (emphasis added)). It does not purport to provide VBG a right of early termination as to the Equipment Rental Agreement, which specifically states "[t]his Agreement may not be terminated early" and also provides that, in the event the Agreement is assigned, "the rights of the new owner will not be subject to any claims, defenses, or set offs that [VBG] may have against [Fraser]." *Id.* at 21-22. Thus, even accepting VBG's assertion that all of the lease documents were executed contemporaneously,[9] Defendants had a colorable argument that VBG's early termination rights under the Agreement Regarding Additional Terms and Conditions did not apply to the Equipment Rental Agreement and that Wells Fargo was not subject to this defense. *See USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 437-38 (3d Cir. 1993) ("Even where several instruments pertaining to one transaction must be construed together, the provisions of one instrument are not thereby imported bodily into another. The application of the rule does not result in actual consolidation of the several contracts . . . . Each

---

[9] In support of its motion to dismiss, Fleischer has produced a version of the Equipment Rental Agreement that includes a signature from Fraser's Lease Administrator, indicating the Agreement was accepted by Fraser on April 28, 2004. *See* Fleischer's Reply Ex. A. The Agreement produced by Fleischer also lists March 22, 2004, as the date VBG signed the Agreement. *Id.*

of several instruments may be construed in the light of the others, without their being considered as one for all purposes." (citation and internal quotation marks and alteration omitted)).

VBG admittedly ceased making payments under the Equipment Rental Agreement after it notified Fraser it was removing the leased equipment from its office in July 2007, and Wells Fargo, as Fraser's assignee, thereafter exercised its right under the Agreement to use available legal remedies to "require that [VBG] pay the remaining balance of this Agreement," Compl. Ex. 1, ECF No. 1-2 at 22, taking the position the Agreement was not subject to early termination. Because the underlying lease documents themselves give rise to a colorable argument that the Equipment Rental Agreement was not subject to cancelation, notwithstanding the Agreement Regarding Additional Terms and Conditions, VBG cannot show Defendants lacked probable cause to initiate the state court action. *See Arader*, 2011 WL 4807924, at *9 (granting motion to dismiss Dragonetti Act claim where defendants could reasonably have believed the statute of limitations on their conversion claim did not begin to run until 2005 and therefore had probable cause to bring the underlying conversion action, even though the state court found claim was time barred); *Bobrick*, 698 F. Supp. 2d at 494 (granting motion to dismiss Dragonetti Act claim where "[t]he evidence and legal arguments that were presented in the underlying action . . . preclude Plaintiffs from showing the absence of probable cause in the procurement, initiation and continuation of that civil proceeding."). Moreover, because Defendants had a basis to argue the Equipment Rental Agreement was not subject to the early termination provision of the Agreement Regarding Additional Terms and Conditions, VBG cannot show they were grossly negligent for failing to include that document in the exhibits to their state court complaint. Consequently, VBG has not plausibly alleged a claim under the Dragonetti Act, and Count I of the Complaint must be dismissed.

VBG also asserts a claim for negligence based on Defendants' initiation and prosecution of the state court action. *See* Compl. ¶¶ 69-77. "Any action in negligence is premised on the existence of a duty owed by one party to another." *Palumbo v. Connors*, No. 95-5526, 1996 WL 243649, at *7 (E.D. Pa. May 9, 1996) (quoting *Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994)). Although VBG makes the bald allegation that Defendants "breached the standard of care required under the circumstances and their legal duties to VBG," Compl. ¶ 74, the Complaint does not identify any legally cognizable duty Defendants owed to VBG with respect to the state court breach of contract action.

With respect to Wells Fargo, VBG does not identify any general duty of care owed by Wells Fargo based on the parties' relationship. *Cf. Rousseau v. City of Phila.*, 514 A.2d 649, 652 (Pa. Commw. Ct. 1986) (recognizing a lender owes no duty of care to his borrower). Rather, VBG identifies two Pennsylvania statutes (42 Pa. Cons. Stat. Ann. § 2503 and the Dragonetti Act) and one rule of procedure (Pa. R. Civ. P. 1023.1) as establishing a duty "not to file frivolous claims in the Pennsylvania courts." Pl.'s Opp'n to Wells Fargo's Mot. to Dismiss 8. Section 2503 permits an award of reasonable counsel fees to a litigant "who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." 42 Pa. Cons. Stat. Ann. § 2503(9). The Dragonetti Act, as noted, provides a cause of action against persons who initiate or continue civil proceedings in a grossly negligent manner or without probable cause and for an improper purpose. 42 Pa. Cons. Stat. Ann. § 8351(a)(1). Insofar as these statutes could be deemed to establish a duty of care, the duty they impose is framed in terms of a litigant's bad faith, gross negligence, and lack of probable cause. Hence, any claim based on such a statutorily imposed duty fails for the same reasons that VBG's Dragonetti Act claim fails. VBG also argues a duty of care arises under Rule 1023.1,

Pennsylvania's version of Federal Rule of Civil Procedure 11, which provides an attorney or pro se party's signature on a pleading or other paper constitutes a certification that, to the best of the signatory's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the paper is not being presented for any improper purpose and has legal and factual support. Pa. R. Civ. P. 1023.1(c). By its terms, the Rule imposes obligations only on attorneys and pro se parties, and not on represented parties. Consequently, the Rule is also insufficient to sustain a negligence claim against Wells Fargo. *See Gigli v. Palisades Collection, L.L.C.*, No. 06-1428, 2008 WL 3853295, at *18 (M.D. Pa. Aug. 14, 2008) (recognizing "[i]n order for a negligence claim to be predicated on a statute (or rule), the statute must disclose the duty of care and clearly apply to the conduct of the defendant" (internal quotation marks omitted)).

With respect to Fleischer, the law in Pennsylvania is clear that an attorney representing a client in litigation "owes no duty of care to the adverse party but only to his own client." *Smith v. Griffiths*, 476 A.2d 22, 26 (Pa. Super. Ct. 1984) ("The general rule is that an attorney will be held liable for negligence only to his client. In the absence of special circumstances, he will not be held liable to anyone else."); *see also Palumbo*, 1996 WL 243649, at *7 (holding attorney owed no duty to opposing party in investigating his clients' case, absent allegations or evidence that attorney was in privity or had a special relationship with the opposing party); *Guy v. Liederbach*, 459 A.2d 744, 750 (Pa. 1983) (holding a plaintiff "must show an attorney-client relationship or specific undertaking by the attorney furnishing professional services . . . as a necessary prerequisite for maintaining [a malpractice suit in negligence]").[10]

_____

[10] VBG's attempt to establish a duty of care owed by Fleischer based on 42 Pa. Cons. Stat. Ann. § 2503 and the Dragonetti Act fails for the reasons discussed above. Insofar as VBG attempts to establish a duty of care based on Rule 1023.1 and various Pennsylvania Rules of Professional

Because VBG has not plausibly alleged that either Wells Fargo or Fleisher owed it a duty of care with respect to the initiation of the state court collection action, VBG's negligence claim (Count II) must also be dismissed.

Finally, VBG asserts a common law fraud claim, alleging Defendants "commenced, continued and/or prosecuted the [state court action] without probable cause" and "knowingly misrepresented material facts in the [state court action]." Compl. ¶¶ 79-80. To state a claim for fraud under Pennsylvania law, a plaintiff must allege the following elements: "1) a misrepresentation, 2) material to the transaction, 3) made falsely, 4) with the intent of misleading another to rely on it, 5) justifiable reliance resulted, and 6) injury was proximately caused by the reliance." *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005). Fraud claims are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or

---

Conduct, this Court is not persuaded these authorities provide a basis for a negligence claim by a litigant against opposing counsel in the face of the case law to the contrary.

VBG's citation to the Restatement (Third) of Law Governing Lawyers is likewise unavailing. VBG invokes § 56 of the Restatement, which states, "[e]xcept as provided in § 57 and in addition to liability under §§ 48–55, a lawyer is subject to liability to a client or nonclient when a nonlawyer would be in similar circumstances." Restatement (Third) of Law Governing Lawyers § 57 (2000). However, the "limited circumstances in which a lawyer owes a duty of care to a nonclient" are set forth in § 51. *Id.* § 51 cmt. a; *see also id.* (describing § 56 as addressing the circumstances in which "a lawyer is . . . subject to liability to a nonclient on grounds other than negligence"). Section 51 provides a lawyer owes a duty of care to a nonclient only in three narrowly drawn circumstances, each with detailed prerequisites. For present purposes, it is sufficient to note the prerequisites for the three categories include the following: (1) when the lawyer or his client "invites the nonclient to rely on the lawyer's opinion or provision of other legal services" and the client is not too remote from the lawyer to be entitled to protection; (2) the lawyer knows one of the client's primary objectives of the representation is that the lawyer's services benefit the nonclient; or (3) the client is a trustee, guardian, executor, or fiduciary and the lawyer knows appropriate action by the lawyer is necessary to prevent or rectify a breach of a fiduciary duty owed by the client to the nonclient. *Id.* None of these circumstances is applicable here.

15

allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Notwithstanding the generality of the allegations in the portion of the Complaint devoted to the fraud claim, in its opposition to Wells Fargo's motion to dismiss, VBG characterizes the claim as based on the following statements by Defendants: (1) a May 18, 2004, letter in which Wells Fargo, falsely holding itself out as Fraser, sent VBG a copy of its lease agreement; (2) unspecified communications between May 2004 and July 2007 in which four different Wells Fargo employees contacted VBG about lease payments and falsely held themselves out as being "from Fraser"; (3) a September 21, 2007, letter in which Wells Fargo falsely represented the Equipment Rental Agreement was not cancelable and other correspondence from Wells Fargo and Fleisher falsely asserting VBG was in default; and (4) the complaint in the state court action, which VBG characterizes as "ma[king] a false claim in the Montgomery County Court of Common Pleas," a claim that "persisted until the eve of trial." VBG's Opp'n to Wells Fargo's Mot. to Dismiss 10. The Court agrees with Defendants that VBG has not adequately pleaded a fraud claim based on these statements.

VBG maintains the first two groups of statements are fraudulent because the communications were from Wells Fargo but purported to be from Fraser. Yet VBG has not alleged how these statements were material or how it relied on the statements to its detriment. Although the statements may have misled VBG to believe Fraser still held the Equipment Rental Agreement, VBG knew Fraser had the right to assign the Equipment Rental Agreement based on the terms of the Agreement itself. Moreover, VBG does not connect these statements in any way to the harm it suffered. VBG does not allege the statements—which were made during the

course of the lease, after VBG had executed the lease documents—induced it to enter into the lease. Nor does VBG connect the statements to Defendants' pursuit of the state court action. These statements therefore do not support a fraud claim.

The latter two groups of statements identified by VBG are alleged misrepresentations regarding VBG's ability to terminate the Equipment Rental Agreement and status as having defaulted on its payment obligations. Because this Court has concluded the lease documents show Defendants had a reasonable basis to assert the Equipment Rental Agreement was not subject to an early termination provision, however, VBG has not plausibly alleged Defendants asserted this position intending to mislead VBG (or the state court). VBG also has not plausibly alleged it (or the state court) relied on these statements to VBG's detriment. To the contrary, VBG promptly asserted its rights under the Agreement Regarding Additional Terms and Conditions, and the parties proceeded to litigate their respective interpretations of the lease documents in state court. In these circumstances, VBG has not plausibly alleged a claim for fraud; therefore, Count III must be dismissed.

For the reasons set forth above, the Court concludes VBG has failed to state a plausible claim against either Wells Fargo or Fleischer for wrongful use of civil proceedings, negligence or fraud. Accordingly, Counts I–III of VBG's Complaint must be dismissed. Because VBG's three substantive claims are legally insufficient, VBG's request for punitive damages (Count IV) will also be dismissed.

An appropriate order follows.