IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VILLARI BRANDES & GIANNONE, PC | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-297 |
| | : | |
| WELLS FARGO FINANCIAL LEASING, INC., et al. | : : | |

### MEMORANDUM

**Juan R. Sánchez, J.**                                                                                           April 14, 2014

      Plaintiff Villari Brandes & Giannone, PC (VBG) asks this Court to reconsider its September 30, 2013, Memorandum and Order dismissing VBG's claims for wrongful use of civil proceedings, negligence, fraud, and outrageous conduct/punitive damages against Wells Fargo Financial Leasing, Inc. (Wells Fargo), and its attorneys at the law firm of Fleischer, Fleischer & Suglia (Fleischer). For the reasons set forth below, VBG's motion for reconsideration will be denied.

      The claims in the instant federal lawsuit arise out of Defendants' pursuit of a breach of contract action against VBG in state court, which Defendants ultimately voluntarily dismissed on the eve of trial. The underlying state contract action, in turn, revolved around a series of agreements pursuant to which VBG leased certain photocopiers and document accounting software from Fraser Advanced Information Systems (Fraser).[1] VBG asserts these documents together constituted a single lease (the Lease). When VBG experienced problems with the leased equipment, which Fraser was unable to remedy, it notified Fraser it was terminating the

---

[1] As explained in the September 30, 2013, Memorandum, these documents include (1) a "Delivery and Installation Certificate," (2) an "Equipment Rental Agreement," (3) a "Sales Agreement," (4) an "Extended Warranty Agreement," and (5) an "Agreement Regarding Additional Terms and Conditions," all of which were attached to VBG's complaint in this action and could therefore be considered by this Court in evaluating Defendants' motions to dismiss. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Lease and ceased making the required monthly payments. VBG maintained the Lease was subject to an early termination provision set forth in one of the Lease documents, the "Agreement Regarding Additional Terms and Conditions" (Additional Terms Agreement) between it and Fraser.

Unbeknownst to VBG, Fraser had assigned the Lease to Wells Fargo, which refused to accept the termination, maintaining the Lease was not cancelable by VBG. In March 2008, Wells Fargo, represented by Fleischer, sued VBG for breach of contract and unjust enrichment in state court, alleging VBG had breached the Equipment Rental Agreement by failing to make the required monthly payments.[2] VBG defended the suit based on the early termination provision in the Additional Terms Agreement. The case proceeded through discovery, and in July 2012, Wells Fargo voluntarily dismissed its complaint on the eve of trial. VBG thereafter filed this suit in December 2012. The crux of VBG's claims is that Defendants initiated and prosecuted the state court action to recover Lease payments they knew VBG did not owe because VBG had properly exercised its rights to cancel the Lease under the early termination provision in the Additional Terms Agreement.

On September 30, 2013, this Court granted Defendants' motions to dismiss VBG's complaint in this action. With respect to VBG's claim for wrongful use of civil proceedings under Pennsylvania's Dragonetti Act, 42 Pa. Cons. Stat. §§ 8351–8354, the Court concluded VBG had failed to state a plausible claim for relief because it was apparent, based on the Lease documents attached to the complaint, that Defendants had a reasonable basis for their position

---

[2] In its state court complaint, Wells Fargo alleged VBG had breached a written "Lease Agreement" between VBG and Fraser, which Fraser had assigned to Wells Fargo; however, the "Lease Agreement" Wells Fargo accused VBG of breaching was the Equipment Rental Agreement, a copy of which was attached to Wells Fargo's complaint. *See* Compl. Ex. 13, ECF No. 1-2, at 61-62, 66-68.

that the Equipment Rental Agreement was not subject to an early termination provision and VBG thus could not show Defendants lacked probable cause to initiate, or were grossly negligent in initiating, the underlying state contract action.  In reaching this conclusion, the Court noted the Equipment Rental Agreement on its face prohibited early termination and permitted Fraser (and its assignees) to use any remedies available under law, including a court action, in the event VBG defaulted on the agreement by failing to pay rent when due.  *See* Compl. Ex. 1, ECF No. 1-2, at 21-22.  The Court also considered the early termination clause included in the Additional Terms Agreement, which provided "[i]n the event of FRASER's failure to perform any of its obligations . . . [VBG] may terminate this Agreement and/or the Sales Agreement."  *Id.*, ECF No. 1-2, at 25.  Because the early termination provision specifically referenced only the Sales Agreement (and the Additional Terms Agreement itself), however, the Court concluded Defendants had a reasonable basis to argue the provision did not apply to the Equipment Rental Agreement.

VBG takes issue with this conclusion, arguing that notwithstanding the Additional Terms Agreement's use of the term "Sales Agreement," the Additional Terms Agreement cannot reasonably be interpreted as applicable only to the Sales Agreement.  Rather, VBG maintains the Additional Terms Agreement unambiguously amended both the Sales Agreement and the Equipment Rental Agreement because Section I of the Additional Terms Agreement concerns a subject (Fraser's obligation to store VBG's preexisting copiers) addressed only in the Sales Agreement, while Section II concerns a subject (the installation of document accounting software) addressed only in the Equipment Rental Agreement.[3]  VBG also argues the Court erred

---

[3] According to VBG, the document accounting software addressed in Section II is "Net Spot Accountant," a product referenced in Fraser's proposal to VBG (which was incorporated into the Additional Terms Agreement) and also mentioned in one of the three versions of the Equipment

insofar as it found the term "Sales Agreement" in the Additional Terms Agreement referred to the Lease document bearing the heading "Sales Agreement," or that the Sales Agreement represented a transaction separate from and independent of those set forth in the accompanying documents.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Reconsideration is thus warranted only when the party seeking reconsideration shows (1) an intervening change in the controlling law; (2) the availability of new evidence not previously available; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Cont'l Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995). As VBG has not identified any intervening change in the applicable law and does not rely on any new evidence, the Court interprets VBG to be relying on the third ground, arguing the Court committed legal and factual errors in concluding Defendants had a colorable basis to bring the state contract action.

As the Court observed in the September 30, 2013, Memorandum, to satisfy its burden to show the defendant acted without probable cause, a Dragonetti Act plaintiff must show the defendant "had no reasonable basis for filing the underlying action." *Broadwater v. Sentner*, 725 A.2d 779, 783 (Pa. Super. Ct. 1999). The question is not whether the defendant "is correct in believing that the court would sustain the claim, but whether his opinion that there was a sound chance that the claim might be sustained was a reasonable one." *Bobrick Corp. v. Santana*

---

Rental Agreement attached to VBG's complaint, but not in the Sales Agreement. *See* Compl. Ex. 13, ECF No. 1-2, at 67.

*Prods., Inc.*, 698 F. Supp. 2d 479, 495 (M.D. Pa. 2010) (quoting Restatement (Second) of Torts § 675 cmt. f (1977)), *aff'd*, 422 F. App'x 84 (3d Cir. 2011); *see also Arader v. Dimitrov*, No. 11-3626, 2011 WL 4807924, at *8-9 (E.D. Pa. Oct. 7, 2011) (granting a motion to dismiss a Dragonetti Act claim even though defendants' underlying state court lawsuit had been dismissed on statute of limitations grounds, where defendants reasonably could have believed their suit was instituted within the statute of limitations).

Because the probable cause analysis turns not on whether Defendants' claims in the underlying state contract action were legally valid but on whether Defendants could reasonably have believed the claims were valid, this Court had no reason to make—and did not make—findings regarding the merits of the state contract action or the proper interpretation of any of the Lease documents.  Hence, insofar as VBG faults the Court for making findings as to whether the Sales Agreement represents a separate transaction or whether the Additional Terms Agreement's reference to the "Sales Agreement" is limited to the document captioned "Sales Agreement," these arguments are misplaced.  The Court considered only whether Defendants' litigation position was reasonable, not correct.

Nor is the Court persuaded its conclusion that Defendants had a reasonable basis to pursue the state contract action was incorrect.  The preamble to the Additional Terms Agreement recites that the purpose of Agreement is to further define the terms and conditions of Fraser and VBG's "agreement regarding photocopiers and document accounting software dated  3/16, 2004," which agreement is then defined as the "Sales Agreement," a term that corresponds to one of the five documents VBG executed on March 16, 2004.  *See* ECF No. 1-2, at 25.  The Additional Terms Agreement goes on to provide "[i]n the event of FRASER'S failure to perform any of its obligations . . . [VBG] may terminate this Agreement or the Sales Agreement."  *Id.*

5

Although VBG takes the position the five documents it executed with Fraser constitute a single Lease, it acknowledges the Lease consists of multiple documents with different titles, including a "Sales Agreement." Compl. ¶ 10. Even if VBG is correct that, as used in the Additional Terms Agreement, the term "Sales Agreement" means something other than the document captioned "Sales Agreement," Defendants had a reasonable basis to take a different position and to argue the Equipment Rental Agreement, which is not specifically mentioned in the Additional Terms Agreement, was not subject to an early termination provision.[4] Because VBG has not demonstrated the need to correct a clear error of law or fact or to prevent manifest injustice, VBG's motion for reconsideration will be denied.

An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez    
Juan R. Sánchez, J.

---

[4] VBG notes the Additional Terms Agreement "directs itself to multiple documents stating that '[t]o the extent inconsistent with ***any other agreement*** between the parties, this Agreement shall control the rights, duties and obligations of the parties.'" Pl.'s Mot. ¶ 17 (quoting Compl. Ex. 1, ECF No. 1-2, at 25 (emphasis added by VBG)). The early termination provision, however, does not include this broad wording, but instead extends only to "this Agreement [i.e., the Additional Terms Agreement] and/or the Sales Agreement." *Id.*